NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| JUSTIN EARL SAUNDERS,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-11918<br>Trial Court No. 3PA-13-1322 CR<br><br>O P I N I O N<br><br>No. 2585 — January 19, 2018 |

Appeal from the Superior Court, Third Judicial District, Palmer, Kari Kristiansen, Judge.

Appearances: John N. Page III (opening brief), and Douglas Moody (reply brief), Assistant Public Defenders, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*]  Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Justin Earl Saunders was charged with third-degree assault under AS 11.41.220(a)(2) for making repeated threats that he would inflict death or serious bodily injury on his mother, Valerie Saunders, and his uncle, Ron Combs (Valerie's brother). Saunders made some of these threats to his mother in person, while he was pounding on the walls and windows of her house. Saunders made the other threats in voice messages that he left on his mother's telephone answering machine.

On appeal, Saunders challenges the instruction that the trial judge gave to the jury on the question of whether Saunders's threatening statements against his uncle, Ron Combs, should be considered "repeated" threats or, instead, one continuing threat. This issue arose because Saunders's threatening statements against his uncle were all contained in a single message that Saunders left on his mother's answering machine. In this message, Saunders stated several times in quick succession, over the course of approximately 45 seconds, that he would take Combs's life.

For the reasons explained in this opinion, we agree with Saunders that the court's instruction to the jury incorrectly stated the law pertaining to this issue, but we conclude that this error was harmless beyond a reasonable doubt.

Saunders also argues that there was a fatal variance between the theory of third-degree assault that the State presented to the grand jury and the evidence that the State presented at Saunders's trial. Saunders interprets the indictment as charging only threats against his mother, Valerie, and he argues that the evidence at trial varied from the indictment because, at trial, the State also presented evidence of Saunders's threats to his uncle, Ron Combs.

Saunders's argument is based on a misreading of the indictment and a misunderstanding of the elements of third-degree assault under AS 11.41.220(a)(2).

We accordingly uphold Saunders's conviction.

*Background facts*

Saunders's mother Valerie allowed Saunders, her adult son, to live in her home on condition that he not consume alcohol or drugs. When Saunders broke this rule and behaved abusively toward Valerie, she told him that he could no longer live in her house, and she bought him a tent and a sleeping bag so that he could reside for the summer in her backyard. One night in May, Saunders, aggrieved by his recent eviction, pounded on the walls and windows of the house — and, according to Valerie, he threatened her with serious harm.

The following day, Valerie obtained a domestic violence restraining order precluding Saunders from contacting her. That evening, Saunders left five messages on Valerie's telephone answering machine. Two of these messages contained threatening statements.

In the first of the threatening messages — a message that lasted about 1 minute and 20 seconds in its entirety — Saunders threatened the life of his uncle, Ron Combs. Here is the pertinent portion of this message — a portion that lasted only 45 seconds:

> If I get served with fucking paperwork that says that I can't be allowed on my mom's property, I will take Ron's life. I swear that before my children and my holy God. I will take your life. If I get served with fucking paperwork because I'm not even allowed in the greenhouse, I will take his life, so — [if] I get served some paperwork like that, I'm going to take Ron's life and your little boyfriend's going to be gone, so I'll kill him. I swear that to God.

About two hours later, Saunders left a second threatening message on Valerie's answering machine. In this message, Saunders said, "You be lucky I don't show up at your house and show you who the boss is, bitch."

Based on the threats that Saunders uttered to Valerie as he pounded on the walls and windows of Valerie's home, plus the two threatening messages that Saunders left on Valerie's answering machine, the State charged Saunders with third-degree assault under AS 11.41.220(a)(2) — for "mak[ing] repeated threats to cause death or serious physical injury to another person" while acting with the intent of placing his mother Valerie "in fear of death or serious physical injury to [her] or [a] family member".

At trial, Saunders's attorney proposed an instruction to guide the jury's determination of whether Saunders's threatening statements regarding his uncle (the threats contained in the first of the two threatening recorded messages) should be counted as one continuous threat or as repeated threats.

Saunders's proposed instruction would have told the jurors that, before they found that Saunders's statements during the first threatening phone message constituted "repeated" threats, the jurors were required to find that there was a "clear break in context between [the] initial and [the] subsequent threats" in the message, and that there was a "passage of sufficient time between threats to permit reflection [by Saunders]."

The trial judge rejected this proposed instruction. Instead, the judge told the jurors that a "break in context" and a sufficient "passage of time" to permit Saunders to reflect on what he was saying were merely "factors" that the jury should consider when deciding whether Saunders uttered a single threat or repeated threats.

Saunders also objected to a jury instruction that allowed the jury to consider both the threats of harm that he made to his mother Valerie and the threats of harm that

he made to his uncle. Saunders argued that the indictment only alleged threats to Valerie. The trial judge overruled this objection.

The jury convicted Saunders of third-degree assault, and he now appeals.

*Why we conclude that the judge's instruction on "repeated" threats was harmless error in this case*

As we have explained, a defendant commits third-degree assault under AS 11.41.220(a)(2) if, acting with the intent to place another person in fear of death or serious physical injury, either to that person or to that person's family member, the defendant makes repeated threats to cause death or serious physical injury to another person.

In *Konrad v. State*, 763 P.2d 1369, 1379-1380 (Alaska App. 1988), we interpreted the phrase "repeated threat" to mean "a threat made more than once". But we recognized that applying this definition literally might create difficulties in circumstances where a single conversation or communication arguably contained more than one threat. We then explained that, when multiple threatening statements are uttered in a single conversation or communication, the jury must treat the defendant's statements as a single threat unless the State shows that the statements were discrete threats:

> When a threat is uttered several times in virtually the same breath, elaborated upon without any significant interruption, or repeated at the request of the listener, the statutory requirement of repetition will not, in our view, be met. Rather, in order to justify the finding that a threat has been repeated or that more than one threat has been made during a single conversation, the evidence must establish a clear break in context between initial and subsequent threats and the passage of sufficient time between threats to permit reflection. The ultimate question should be whether the

repetition of the threat amounted to a separate act by the accused or whether it is part of a single continuous act. Resolution of this question lends itself to no inflexible rule and should ordinarily be left to the jury, whose decision should be on the totality of the evidence in the case at issue.

*Konrad*, 763 P.2d at 1380.

(In *Konrad*, the defendant's threats against his wife were uttered over the course of fifteen minutes, and the individual threats were interspersed with discussions of other matters. On that record, we concluded that the jury could reasonably find that this conversation contained "repeated" threats. [1])

Relying on what this Court said in *Konrad*, Saunders's attorney asked the trial judge to instruct the jury that Saunders's threats against his uncle — the threats that Saunders uttered during the first threatening phone message — could not be considered "repeated" threats unless the jury affirmatively found a clear break in context between the various threats and the passage of sufficient time to allow Saunders to reflect on what he was saying. Instead, the trial judge instructed the jurors that these were merely "factors" for them to consider when they decided whether Saunders made one continuing threat against his uncle or repeated threats. [2]

---

[1]  *Id*., 763 P.2d at 1380-81.

[2]  Here is the challenged jury instruction that the judge gave in Saunders's case:

A defendant may not be convicted of assault in the third degree as charged in this case unless he made "repeated threats." In order to determine whether the defendant made repeated threats the jury must consider the following factors:

(1) Whether there was a clear break in context between initial and subsequent threats; and

(continued...)

In retrospect, we see that our discussion of this issue in *Konrad* might have been worded more clearly — and we see how the trial judge in this case might have interpreted *Konrad* as merely identifying the factors that a jury should consider when deciding whether a defendant uttered discrete threats.

But we agree with Saunders that *Konrad* sets forth the *elements* of what it means for a person to utter "repeated" threats during a single conversation, not just factors to be considered by the trier of fact. We therefore clarify this matter now.

As *Konrad* says, the ultimate question is whether the defendant's repeated threatening statements amounted to separate acts, or whether those repeated statements were simply part of a single continuous threat. To answer that question, the fact-finder must decide whether the evidence establishes "a clear break in context" between the different threatening statements and "the passage of sufficient time" between the threatening statements "to permit reflection".

There is no set rule for what constitutes "a clear break in context" and "the passage of sufficient time to permit reflection". This must be left to the fact-finder, and the fact-finder's decision should be based on the totality of the evidence.

Now that we have clarified these matters, we turn to the jury instruction in Saunders's case — the instruction dealing with the first threatening phone message that

---

[2] (...continued)
    (2) Whether there was a passage of sufficient time between threats to permit reflection.

The ultimate question should be whether the repetition of the threat amounted to a separate act by the defendant or whether it was part of a single continuous act. The jury is entitled to consider all the evidence introduced in this case to determine based upon the totality of the circumstances whether Justin Saunders made "repeated threats."

Saunders left on his mother's answering machine, during which Saunders threatened his uncle's life.

The jury instruction was wrong insofar as it told the jurors that separation in time and context were merely factors bearing on their decision as to whether Saunders's various threatening statements constituted "repeated threats". And this error was potentially exacerbated when the prosecutor argued to the jury that the phone message contained "repeated" threats.

Nevertheless, given the facts of this case, we conclude that this error was harmless beyond a reasonable doubt. As we have explained, the total length of Saunders's threatening phone message was 1 minute, 20 seconds, and Saunders's threats against his uncle in that message were all made during a single-topic rant that lasted about 45 seconds. Given this record, and given the instruction that the jurors received, we conclude that there is no reasonable possibility that the jurors would have viewed Saunders's statements in the phone message as "repeated" threats.

*There was no fatal variance between the indictment and the proof at trial*

Saunders also asks us to reverse his conviction on the ground that the State's evidence at trial fatally varied from the theory of the grand jury indictment.

The indictment in this case alleged that Saunders, acting "with intent to place Valerie Saunders in fear of death or serious physical injury to [herself] or [her] family member, made repeated threats to cause death or serious physical injury to Valerie Saunders."

Saunders's variance argument hinges on this last phrase, "made repeated threats to cause death or serious physical injury to Valerie Saunders". Saunders argues

that, by using this language, the State limited its case to the threats that Saunders made to harm his mother, Valerie, and not Saunders's threats to harm his uncle, Ron Combs.

The language at issue is ambiguous. As Saunders suggests, one could read the concluding words, "to Valerie Saunders", as modifying the phrase "cause death or serious physical injury". Interpreted this way, the indictment would charge Saunders with making repeated threats to harm his mother.

But the language at issue could also be read another way. The concluding words, "to Valerie Saunders", could be read as modifying the phrase "made repeated threats". Interpreted this way, the indictment would charge Saunders with communicating repeated threats to his mother that he would cause death or serious physical injury either to herself or to a family member (*i.e.*, to her brother, Saunders's uncle Ron Combs).

This second reading is more faithful to the wording of the charging statute and to the State's presentation to the grand jury.

The charging statute, AS 11.41.220(a)(2), makes it a crime for a person to make "repeated threats to cause death or serious physical injury" to another person, if the person making these repeated threats is acting with the intent of placing another person in fear that they or a family member will suffer death or serious physical injury.

At the grand jury, Ron Combs testified about the threatening statements directed toward him. But Combs explained that Saunders communicated these statements, not to Combs personally, but rather to *Valerie*. The evidence showed that Saunders made these threatening statements during a message that he left on Valerie's answering machine. At grand jury, Saunders's statements were described as part of "the messages that he left for his mom."

And as can be seen from the portion of that phone message that we quoted earlier in this opinion, Saunders was clearly addressing his remarks to Valerie. He warned her that he would kill her brother.

Thus, the State's case at grand jury was that Saunders committed third-degree assault by repeatedly *communicating to his mother* that he would harm her and/or her brother (*i.e.*, her "family member").

We accordingly conclude that there was no variance between the State's case at grand jury and the evidence presented at Saunders's trial.

*Conclusion*

The judgement of the superior court is AFFIRMED.